## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MERCY LAND ACADEMY INC. a )
Delaware Corporation and CHARLES )
SALAKO, an Individual, )
  )
       Plaintiffs, )
  )   C.A. No. N20C-06-201 AML
      v. )
  )
ACADEMY OF EARLY LEARNING )
INC., a Delaware Corporation, and )
EFTIHIA M. ZEREFOS, an Individual, )
  
      Defendants.

Submitted: March 24, 2022
Decided: April 13, 2022

## ORDER GRANTING DEFENDANTS'
## SECOND MOTION TO COMPEL DISCOVERY RESPONSES

WHEREAS, on October 28, 2021, Academy of Early Learning Inc. and Eftihia M. Zerefos ("Defendants") served discovery requests upon Mercy Land Academy Inc. and Charles Salako ("Plaintiffs") in the form of Interrogatories and Requests for Production (collectively, the "Discovery Requests").

WHEREAS, on February 11, 2022, the parties met and conferred via Zoom and Defendants emailed Plaintiffs after the meeting to confirm the information and documentation that Plaintiffs agreed to produce or supplement.

WHEREAS, on February 22, 2022, and February 25, 2022, Defendants sought a status update regarding the documentation and information Plaintiffs agreed to

produce and advised that if the same was not provided by March 4, 2022, the instant Motion would be filed.[1]

WHEREAS, on March 1, 2022, Defendants sent two e-mails to Plaintiffs pointing out the deficiencies with (i) verifications to the Interrogatories, and (ii) production of the information and documents agreed upon in the meet and confer.[2]

WHEREAS, on March 8, 2022, Defendants filed a Second Motion to Compel (the "Motion") alleging Plaintiffs failed to provide Defendants with appropriate answers and responses to Defendants' Discovery Requests and failed to properly notarize and execute discovery verifications.[3]

NOW, THEREFORE, after review of the parties' filings and the record, the Court finds as follows:

1.     This litigation involves a Sales Agreement Document (Part I) Memorandum of Understanding (the "MOU") for the sale of Academy of Early Learning, Inc., ("AOEL"). Upon signing the MOU, Plaintiffs were to provide $20,000 in escrow (the "escrow amount") to Defendants. At closing, the escrow amount would be credited toward the final purchase price.

---

[1] Def.'s Mot., Ex. R.

[2] *Id*., Ex. T.

[3] D.I. 32.

2. The MOU stated the escrow amount would be returned to Plaintiffs under the following circumstances: irregularities in financial documents submitted by the Defendants; loan disapproval; and Defendants' refusal to assume a personal loan.

3. Plaintiffs gave Defendants the escrow amount, made payable to AOEL, on or about October 9, 2018. The checks were deposited and placed in escrow. Plaintiffs filed an application for childcare licensing with the State of Delaware to begin the process of transferring ownership of AOEL from Defendants to Plaintiffs.

4. On December 28, 2018, Plaintiffs received a "Notice of Intent to Place on Warning of Probation" (the "First Notice") from the State of Delaware for alleged noncompliance with *DELACARE: Regulations for Early Care and Education and School-Age Centers*. Mercy Land Academy Inc. ("MLA") formally was placed on probation following an administrative hearing regarding the allegations found in the First Notice for the period between January 22, 2019, to July 21, 2019. MLA could not apply for licensing for any childcare business as a condition of its probation.

5. On January 31, 2019, Plaintiffs received a "Notice of Intent to Deny License Application" (the "Second Notice") from the State of Delaware and Plaintiffs' application for childcare licensing was withdrawn. Plaintiffs no longer could obtain the childcare license necessary to effectuate the sale/transfer of AOEL.

6. Due to the consequences of the Second Notice, Plaintiffs informed Defendants they no longer could purchase AOEL and requested Defendants return the escrow amount to Plaintiffs. Defendants refused. This lawsuit ensued.

7. Delaware Superior Court Rule 33(a) states interrogatories "shall be answered separately and fully in writing under oath" and "signed by the person making them."[4] Plaintiffs produced with their discovery responses documents that were titled "verification" but that neither were notarized nor hand-signed by the answering party. Plaintiffs' documents contained an e-signature, which is insufficient for purposes of a verification by a party. Accordingly, Defendants sought the Court's intervention on this and other deficiencies.

8. Typically, verifications – including those required by Rule 33(a) – must be notarized. As a result of the challenges associated with the ongoing COVID-19 pandemic, the Court has a standing order permitting the use of unsworn declarations under 10 *Del. C.* § 3927 in lieu of sworn verifications.[5] But a party's "e-signature" is not sufficient for purposes of a verification.[6]

---

[4] Del. R. Civ. P. Super. Ct. 33(a). For the instant action, the persons answering the interrogatories and whose signatures under oath is required are Charles Salako and an appropriate representative of Mercy Land Academy Inc.

[5] *See* Amended Standing Order No. 8. Under 10 *Del. C.* § 3927, as limited by 10 *Del. C.* Section 5354(b), the requirements for sworn statements, verifications, certificates, or affidavits in filings with the Superior Court are suspended until further Order of the Court. *Id.* at ¶ 1.

[6] *See Id.*

9.      The Court's standing order concerning verifications reads: "The unsworn statement, verification, certificate, or affidavit shall, as required by 10 *Del. C*. § 3927, be in substantially the following form:

> I declare under penalty of perjury under the laws of Delaware
> That the foregoing is true and correct.
> Executed on the __ day of _____ (month) ____ (year).
> _____ (Printed Name)
> _____ (Signature)."[7]

10.     Verification ensures an individual is affirming, under oath, the truthfulness and validity of their responses. A valid signature prevents a later argument that the individual was unaware of the responses. Interrogatory responses may be used as evidence at trial, so Defendants' interest in obtaining sworn answers is neither unreasonable nor a mere "technicality." Accordingly, the Plaintiffs' verifications must be hand-signed and otherwise conformed to the unsworn declaration format, if not already done. [8]

11.     The record also reflects that Plaintiffs' discovery responses were deficient in other ways. Following the meet and confer on February 11, 2022,

---

[7] *Id*. at ¶ 3.

[8] Plaintiffs allege in their Opposition to Defendants' Second Motion to Compel (hereinafter, the "Opposition") they provided Defendants with two sworn verifications and sought Mr. Salakos' personal signature "even though he happened to be out of the country at the time." Plf.'s Opp. at ¶12. If Plaintiffs have provided Defendants with proper verification, that portion of this Order is moot, but the record does not contain these alleged verifications.

Plaintiffs agreed to provide the following: (i) all communications between MLA personnel and the Department of Services for Children, Youths & Their Families and the Office of Licensing personnel (including but not limited to Lara Flowers and Chaneya Edward); (ii) all decisions, orders, findings of fact, etc. related to the Department's decision to place MLA on probation; and (iii) updated responses to requests for production that were responded to by a "N/A" followed by an explanation that the documents requested were not in Plaintiffs' clients possession (where appropriate) and identifying any documents that were deleted.[9]

12.  The discovery identified in the March 1, 2022, email would allow Defendants to obtain information directly related to the issues raised in Plaintiffs' complaint. When evaluating a motion to compel discovery, the standard of relevance the Court must apply is whether there is any possibility that the information sought may be relevant to the subject matter of the action.[10]  The items are relevant to whether Plaintiffs are entitled to return of the money held in escrow, and complete discovery responses therefore must be produced by Plaintiffs.

13.  Plaintiffs advance no argument in their Opposition to Defendants' Second Motion to Compel (the "Opposition") as to why the information sought is

---

[9] Def.'s Mot., Ex. T.

[10] *Powell v. AmGUARD Insurance Company*, 2019 WL 2114083, at * 5 (Del. Super. Ct. May 14, 2019) (*citing Incyte corp. v. Flexus Biosciences, Inc*., 2017 WL 5128979, at *4 (Del. Super. Ct. Oct. 27, 2017)).

not relevant to Defendants. The Opposition simply admits or denies allegations from the Motion, without providing further detail regarding Plaintiffs' failure to respond in accordance with the parties' agreement at the meet and confer.

14. Accordingly, the Second Motion to Compel is **GRANTED** and Plaintiffs shall produce within 10 days:

    a. All communications between MLA personnel and the Department of Services for Children, Youths & Their Families and the Office of Licensing personnel (including but not limited to Lara Flowers and Chaneya Edward);

    b. All decisions, orders, findings of fact, etc., related to the Department's decision to place MLA on probation;

    c. An amended response to those requests for production to which Plaintiffs responded "N/A," with an explanation that the documents requested are not in Plaintiffs' possession (where appropriate) and identification of any documents that have been deleted; and

    d. unsworn verifications consistent with the Court's standing order.

15. Lastly, Plaintiffs shall pay Defendants' reasonable attorneys' fees and costs incurred in connection with the Second Motion.[11] Plaintiffs' Opposition was

---

[11] Del. R. Civ. P. Super. Ct. 37(a)(4)(A). "If the motion [to compel] is granted…the Court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion…pay to the moving party the

not substantially justified, and there are no other circumstances that make an award of expenses to Defendants unjust.  Defendants shall file an affidavit of fees and costs within 10 days.

                                    /s/ Abigail M. LeGrow
                                    The Honorable Abigail M. LeGrow

---

reasonable expenses incurred in obtaining the order, including attorney's fees, unless the Court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." *Id.*